STATE OF NORTH CAROLINA v. TONY GRAHAM

No. 7628SC705

(Filed 6 April 1977)

**Automobiles § 134— unauthorized use of vehicle — statute unconstitutional**

G.S. 14-72.2 making the unauthorized use, taking or exercise of control over a conveyance a misdemeanor and unauthorized use of an aircraft a felony violates the provisions of Art. I, § 19 of the N. C. Constitution and the Fourteenth Amendment of the U. S. Constitution in that the statute is too vague and fails to comply with constitutional due process standards of certainty.

APPEAL by defendant from *Martin (Harry), Judge.* Judgment entered 21 April 1976 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 8 February 1977.

Defendant was indicted for the felonious larceny of a Honda motorcycle of the value of $700.00, the property of one Gary Glass. In December 1975 he was tried in Superior Court on a statement of charges signed by the Assistant District Attorney which charged that on 9 May 1975 defendant "did unlawfully and willfully without the consent of Gary Glass, the owner, take and exercise control of the conveyance of Mr. Glass, to wit: One (1) 1972 Honda Motorcycle," in violation of G.S. 14-72.2. The jury was unable to agree, and the judge declared a mistrial.

On 10 February 1976 defendant filed a written motion to dismiss the charges against him for the reason that the statute, G.S. 14-72.2, which he was charged with having violated, is unconstitutional on its face and as applied to defendant. The motion was denied.

In April 1976 defendant was again brought to trial in Superior Court on the statement of charges. He pled not guilty. The State presented evidence to show the following:

In May 1975 Gary Glass was the owner of the motorcycle described in the statement of charges. From October 1974 until April 1975 he lived with one Michael Angel at a trailer park near Fletcher. Angel made the monthly payments on the trailer, and Glass rented a room from him. Glass first met defendant in April 1975 after defendant's family purchased the trailer park. On 2 April 1975 Glass delivered to defendant an envelope con-

taining the April rent for the trailer space, which Angel had
left with Glass for delivery to defendant. In the third week
of April 1975 Glass moved out of the trailer park and moved
in with his family at Hendersonville. He left the motorcycle
at the trailer park because it had no battery, no license plate,
and was inoperable. When he returned to the trailer park on
9 May 1975, he found that the trailer in which he had lived
with Angel had been repossessed and moved away and that his
motorcycle was missing. A neighbor, who lived nearby in the
trailer park, saw defendant and another person about 9 May
1975 loading the motorcycle in the back of a pickup truck. Glass
contacted defendant and told him that defendant had made a
mistake in taking the motorcycle and that the motorcycle be-
longed to Glass and not to Angel, who owned the trailer. De-
fendant replied that Angel had left without notice and that rent
was owed on the trailer space from 1 May to 9 May, which was
payable plus a storage fee for the motorcycle. Defendant refused
to return the motorcycle. Glass brought claim and delivery,
but as of the date of defendant's trial, he had not yet recovered
his motorcycle.

Defendant testified that he became manager of the trailer
park after his parents purchased it from the former owner on
24 March 1975. As manager, he collected the rents, made re-
pairs, and did the maintenance for the park. When a tenant
moved out he cleaned up the space and advertised for new
tenants. On 2 April 1975 Gary Glass paid him $40.00, being
the monthly space rental, and defendant gave Glass a writ-
ten receipt. The receipt was made out to Glass, and Glass
never told defendant he was not a tenant. Defendant had seen
Angel going in and out of the park, but had never talked with
him. From 2 April until 9 May 1975, two vehicles were parked
at the trailer occupied by Glass and Angel. One was a 1965
Oldsmobile, on which all the tires were flat, and the other was
the Honda motorcycle. When defendant arrived at the park on
9 May, the trailer was gone and the lot was "a pretty bad mess."
The Oldsmobile and the Honda motorcycle were still there. On
several occasions he had noticed children around the motor-
cycle, had seen one child up on the motorcycle, and he was
worried over the possibility that the motorcycle would turn
over and hurt someone. In addition, he could not get another
trailer in without moving the motorcycle. At that time he had
received no communication from Glass or Angel concerning the

motorcycle or car, and he did not know which of the tenants owned the motorcycle. Because the motorcycle was in his way for further renting the space and because it was hazardous to the children in the park, he decided it would be better if it was moved outside the park and stored. He picked up the motorcycle, loaded it in the truck, and took it to his brother's residence in West Asheville, where he stored it in the basement. When Glass called and asked him if he had the motorcycle, he told Glass that he did and that there was no problem, Glass could have it back; all he wanted was the rent due on the space until the 9th, which would be $14.00, and a small charge for having picked up and stored the motorcycle. Glass said he was not going to pay the rent and that defendant should contact Angel, but Glass did not know Angel's address. Defendant has still never been able to locate Angel, and defendant has never been offered anything for the rent or moving fee. He has never used the motorcycle, but has just stored it. He at first intended to move the car also, but after all the trouble he had had over the motorcycle, he is afraid to do so, and the car is still at the trailer park.

The jury found defendant guilty as charged, and the court entered judgment sentencing defendant to jail for a period of eight months. This sentence was suspended upon certain conditions, including the conditions that defendant immediately transfer possession of the motorcycle to Glass, pay into court for the benefit of Glass the sum of $500.00 "partial restitution," and pay a fine of $200.00. From this judgment, defendant appeals.

*Attorney General Edmisten by Associate Attorney Catharine B. Arrowood for the State.*

*Cecil C. Jackson, Jr., for defendant appellant.*

PARKER, Judge.

By Sec. 38 of Chapter 1330 of the 1973 Session Laws, our General Assembly added a new section to Chapter 14 of the General Statutes to become effective on 1 January 1975. The new section, which now appears in the General Statutes as G.S. 14-72.2, is as follows:

"§ *14-72.2 Unauthorized use of a conveyance.*—(a) A person is guilty of an offense under this section if, without

the consent of the owner, he takes, operates, or exercises control over an aircraft, motorboat, motor vehicle, or other motor-propelled conveyance of another.

(b) Consent may not be presumed or implied because of the consent of the owner on a previous occasion to the taking, operating, or exercising control of a conveyance given to the person charged or to another person.

(c) Unauthorized use of an aircraft is a felony punishable by a fine, imprisonment not to exceed five years, or both, in the discretion of the court. All other unauthorized use of a conveyance is a misdemeanor punishable by a fine, imprisonment not to exceed two years, or both, in the discretion of the court.

(d) An offense under this section may be treated as a lesser-included offense of the offense of larceny of a conveyance.

(e) As used in this section, 'owner' means any person with an interest in property such that it is property of another as far as the person accused of the offense is concerned."

By Sec. 39 of Ch. 1330, 1973 Session Laws, G.S. 20-105, the statute which formerly dealt with an offense sometimes referred to as "temporary larceny" of a vehicle, was repealed effective 1 January 1975.

Defendant in the present case stands convicted under G.S. 14-72.2. In apt time and manner before the trial court he challenged the constitutionality of that statute. He has renewed that challenge on this appeal, and the principal question now presented is whether the challenged statute is constitutional. We hold that it is not.

At the outset, we recognize that "every presumption is to be indulged in favor of the constitutionality of a statute," *State v. Matthews,* 270 N.C. 35, 43, 153 S.E. 2d 791, 797 (1967), and that, in passing upon the constitutional question involved, the courts "must assume that acts of the General Assembly are constitutional and within its legislative power until and unless the contrary clearly appears." *State v. Anderson,* 275 N.C. 168, 171, 166 S.E. 2d 49, 50 (1969). We also recognize that, except as limited by the State or Federal Constitutions, the General

Assembly has the inherent power to define and punish any act as a crime, including the power "to declare an act criminal irrespective of the intent of the doer of the act." *State v. Hales,* 256 N.C. 27, 30, 122 S.E. 2d 768, 771 (1961). Nevertheless, where a criminal statute clearly transgresses some provision of the State or Federal Constitutions, and where, as here, the question is squarely presented, it is the duty of the courts to declare the act void. We find G.S. 14-72.2 violates the provisions of Art. I, § 19, of the Constitution of North Carolina and of the Fourteenth Amendment to the Constitution of the United States. Accordingly, we declare that statute void.

Firmly embedded in our constitutional law are the fundamental precepts "[t]hat the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties" and that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Const. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926) ; *accord, State v. Vestal,* 281 N.C. 517, 189 S.E. 2d 152 (1972) ; *State v. Furio,* 267 N.C. 353, 148 S.E. 2d 275 (1966) ; *State v. Hales, supra.*

Examining G.S. 14-72.2 in the light of the foregoing principles, we first note that in its heading the statute speaks in terms of "[u]nauthorized *use* of a conveyance" (emphasis added), and in subsection (c) the statute makes the "[u]nauthorized *use* of an aircraft" a felony and "[a]ll other unauthorized *use* of a conveyance" (emphasis added) a misdemeanor. If these were the only provisions, it is possible that the statute might be sufficiently clear to withstand the challenge that it is void for vagueness, for in such case it might reasonably be said that the concept of the "unauthorized *use* of a conveyance" is sufficiently well understood that men of common intelligence would not have to guess at its meaning. The statute, however, is not so limited. Subsection (a) declares that "[a] person is guilty of an offense [without specifying whether a felony or a misdemeanor] under this section if, without the consent of the owner, he takes, operates, *or exercises control over* an aircraft, motorboat, motor vehicle, or other motorpropelled conveyance of another." (Emphasis added.) Subsection (a) does not spell out the degree of the offense proscribed,

whether a felony or a misdemeanor, nor does it specify what punishment might be imposed; these provisions are included only in subsection (c). On the other hand, subsection (c) is not restricted to proscribing the unauthorized use of *motor-propelled* conveyances, while subsection (a) is clearly limited so as to apply only to *motor-propelled* conveyances. It therefore seems that the Legislature intended the two sections to be read and construed together. The statute contains no declaration that its various subsections should be considered as severable, and in view of the manifest legislative intention that all sections be construed together as integral parts of the whole, we hold that the statute must be considered in its entirety. Accordingly, we do not consider subsection (a) as severable from the remainder of G.S. 14-72.2, and we do not pass upon the question whether, absent subsection (a), the statute might be held sufficiently clear to withstand constitutional attack on the ground of vagueness. Incidentally, we note that such a question could not in any event be presented on the present record, because there was no evidence in this case that the defendant ever made any *use* of the motorcycle here involved. On the contrary, all the evidence shows the motorcycle was inoperable.

When G.S. 14-72.2 is viewed as a whole against the background of the facts of this case, the vagueness and overbreadth of the statute are readily revealed. Two motor vehicles, inoperable and apparently abandoned, are left by their owners on lands of others. To remove them necessarily requires that someone "exercises control" over them. If the landowners, their agent (the defendant), or anyone else, does remove either vehicle without the consent of its owner, the statute is violated and the guilty party is subject to imprisonment. Yet so long as the vehicles remain on the land, the landowners are deprived of the lawful use of their own property without due process of law. Advertent to this dilemma, the able trial judge in the present case instructed the jury as follows:

"Now, members of the jury, I further instruct you that the fact that the motorcycle may have been hazardous to children would not be a defense to this charge. Such possible hazard could be removed in other ways. For example, it would not have been a violation of this statute for the motorcycle to have been removed from the property of the defendant and left upon the right-of-way of the public

highway. A person has a right to remove someone else's property off of his own property. When someone leaves a car or a motorcycle upon someone else's land, then the owner of that land has a right to remove that motorcycle off of his property.

That's not the purpose of this statute. The purpose of this statute is to prevent persons from taking and carrying away the motor vehicle of another without any consent or permission."

The difficulty with this solution is that it simply does not comport with the language of the statute. It could only be arrived at by rewriting the statute by judicial fiat. (Quite incidentally, it may be questionable whether the solution suggested, i.e., leaving the motorcycle on the public highway right-of-way, could be accomplished without violating another penal statute, G.S. 136-90.)

The statute as enacted by the General Assembly does not include "carrying away" the motor vehicle of another as an essential element. The mere exercise of control over the motor-propelled conveyance of another without the consent of the owner, regardless of the circumstances and quite apart from the bona fides of the accused, constitutes the offense proscribed in the statute. One may readily imagine many circumstances in which most reasonable men would think it entirely proper to exercise a temporary control over the motor vehicle of another without first obtaining the owner's consent. For example, if one should find the entrance to his driveway partially blocked by a parked vehicle, most citizens would deem it entirely proper to push the offending vehicle the short distance required to clear the entrance to his home without first waiting to obtain the consent of the owner. Yet to do so would subject the homeowner to prosecution under this statute. We doubt the legislature intended such a result. Nevertheless, where the legislature declares an offense in language so general and indefinite that it may embrace not only acts commonly recognized as reprehensible but also others which it is unreasonable to presume were intended to be made criminal, citizens subject to the statute may not be required to guess at their peril as to its true meaning. Such a statute is too vague, and it fails to comply with constitutional due process standards of certainty. For that reason we declare G.S. 14-72.2 void.

The record before us fails to disclose why the owner of the motorcycle has so far been unsuccessful in obtaining it from the defendant by the civil process of claim and delivery. Although the defendant's stubborn refusal to surrender possession may be reprehensible, that fact furnishes no basis for sustaining his conviction for violation of a void statute.

The judgment appealed from must be vacated.

Judgment vacated.

Judges MARTIN and ARNOLD concur.