FORD MARKETING CORPORATION v. NATIONAL GRANGE MUTUAL INSURANCE COMPANY AND AETNA CASUALTY AND SURETY COMPANY

No. 7626DC869

(Filed 1 June 1977)

Insurance § 87— automobile liability insurance — driver not in lawful possession — no coverage under owner's policy

At the time of the collision giving rise to this action, the driver of a truck was not in lawful possession of the vehicle pursuant to G.S. 20-279.21(b)(2) and therefore was not covered under the truck owner's liability insurance policy where the evidence tended to show that the owner of the truck placed it in the possession of his employee who was his brother-in-law and put no restrictions on the employee's use of the truck; the employee had previously allowed his son-in-law to use the truck, which use was unknown to the owner but to which the owner subsequently stated no objection; there was a close family relationship between the employee and his son-in-law; and at the time of the collision the son-in-law was driving the truck without the employee's express permission or knowledge, the son-in-law having taken the truck for his own use from the employee's premises while the employee was on vacation.

APPEAL by defendant National Grange Mutual Insurance Company from *Saunders, Judge.* Judgment entered 7 October 1976 in District Court, MECKLENBURG County. Heard in the Court of Appeals 13 April 1977.

The facts in this case are not in dispute, and the case was tried by Judge Saunders without a jury.

On August 27, 1973, William Kenneth Baucom was the owner of a 1967 Chevrolet pickup truck. The truck was bought by Baucom for use in his contracting business, and during the one year that he had owned the truck prior to August 27, 1973, the truck had always remained in the possession of one Robert

Marvin Harrington. Harrington was an employee of Baucom and was also a brother-in-law of Baucom.

During the year's time referred to, Harrington drove the truck to his home at the end of the working day and also drove it to his home on weekends. Baucom put no restrictions on Harrington's use of the truck, and there was never any conversation between Baucom and Harrington regarding the use of the truck by any third party. Harrington on occasion used the truck for personal purposes, which use was unknown to Baucom. Baucom does not now have any objection to such use by Harrington. Harrington had been employed by Baucom for eleven years, and Baucom had confidence in Harrington's judgment regarding the use of the truck, which Harrington kept at his home on a regular basis.

Sometime prior to August 27, 1973, and prior to Baucom buying the truck in question, Harrington had in his possession and kept on a regular basis at his home another truck likewise owned by Baucom.

Larry Neal Melton was a son-in-law of Harrington, having married Harrington's daughter some six years prior to August 27, 1973. At some time prior to August 27, 1973, and during the time that Harrington kept in his possession the other truck owned by Baucom referred to above, Melton and his wife and his wife's sister wanted to borrow this other pickup truck for the purpose of moving the sister's furniture. The three of them went to a job site where Harrington was working where he gave them permission to use the truck for this purpose. The truck was used by the three of them for this purpose, being driven by Melton, and it was returned to him by Melton at the job site later the same day.

During the six-year period that Melton was married to Harrington's daughter and prior to August 27, 1973, Melton and his wife lived approximately one and one-half or two miles from Harrington's residence. They had numerous occasions to see each other during this time. They visited in each other's homes on a regular basis and ate meals in each other's homes regularly. They also from time to time attended church together. Harrington and Melton hunted together, and on occasion Harrington loaned Melton one of his shotguns. Also during this period, Harrington's daughter, Ann, would borrow Harrington's personal automobile with his permission from time to time for

her own purposes, and Melton accompanied her on these occasions.

During such six-year period of time, Harrington never refused anything to Melton which Melton requested, and Baucom never at any time told Harrington not to let Melton drive the pickup truck.

On August 27, 1973, Harrington was away on vacation, which fact was known to Melton. Melton and his wife, Ann, wanted to move some paneling to their home. The only vehicle owned by them was a Volkswagen, which was too small to carry the paneling. Melton and Ann decided to go get the 1967 Chevrolet pickup truck. Melton was at first hesitant to do so, knowing that Harrington was away; but his wife, Harrington's daughter, said that her father would not mind.

Melton, his wife, and young son then drove their Volkswagen to Harrington's residence. No one was at home. Melton looked into the pickup truck and found the keys in the ashtray. His wife then returned home in the Volkswagen, and Melton, accompanied by his young son, drove away in the pickup truck for the purpose of buying the paneling to put in the home.

Shortly afterwards and while operating the truck for this purpose, Melton had an accident with an automobile owned by the plaintiff, Ford Marketing Corporation, which resulted in damage to the plaintiff's property. Thereafter an action was brought by the plaintiff herein against Larry Neal Melton in the District Court of Mecklenburg County. Judgment was entered on March 4, 1975, against Melton in the principal sum of $3,500.00. Execution on such judgment was thereafter issued in Union County, Melton's residence, and was returned by the sheriff of Union County unsatisfied, and the judgment remains unpaid.

The defendant, National Grange Mutual Insurance Company, on August 27, 1973, insured Larry Neal Melton under a liability policy. This policy insured Melton while operating a non-owned automobile.

The defendant, Aetna Casualty and Surety Company, on August 27, 1973, had in force and effect its policy of liability insurance which named Baucom's 1967 Chevrolet pickup truck as an insured vehicle. Under this policy the defendant Aetna provided coverage for its policyholder, William Kenneth Bau-

com, and any other person while using the pickup truck with Baucom's permission.

There was at the time of such collision a close family relationship existing between Melton and Harrington. Melton's use of the truck on this occasion, however, was entirely without the knowledge of either Harrington or Baucom. Harrington stated to Melton after the accident that had he been at home on such occasion, he would either have given Melton permission to use the truck for the intended purpose or he would have driven him himself. Harrington testified in this action, and the court found as a fact that Harrington now has no objection to Melton's use of the truck under the circumstances and on the occasion in question.

From the foregoing facts the trial judge concluded as a matter of law that Larry Melton was not using the pickup truck owned by William Kenneth Baucom with the express or implied permission of Baucom, nor was Larry Melton in lawful possession of the Baucom truck at the time of the collision in question on August 27, 1973. The trial judge further concluded that Baucom's liability carrier (Aetna Casualty and Surety Company) did not provide coverage for Melton on the occasion of the collision in question and that Melton's liability carrier (National Grange Mutual Insurance Company) did provide coverage for Melton on the occasion of the collision in question.

Judgment was rendered in favor of the plaintiff against National Grange Mutual Insurance Company.

*Martin, Howerton, Williams & Richards, by Neil C. Williams, for the plaintiff.*

*Golding, Crews, Meekins, Gordon & Gray, by Rodney Dean and C. Byron Holden, for Aetna Casualty and Surety Company.*

*Wade & Carmichael, by R. C. Carmichael, Jr., for National Grange Mutual Insurance Company.*

BROCK, Chief Judge.

Appellant makes no argument that the trial judge erred in concluding that Melton was not using the truck with the express or implied permission of Baucom. However, appellant does argue strenuously that the trial judge erred in concluding that Melton was not in lawful possession of the Baucom truck at the time

of the collision. Our discussion, threfore, is confined to the question of lawful possession.

In 1967 the legislature amended G.S. 20-279.21 (b) (2) by adding to the persons insured under an owner's liability insurance policy "any other person in lawful possession" of the insured's vehicle.

In the case of *Packer v. Insurance Co.*, 28 N.C. App. 365, 221 S.E. 2d 707 (1976), this Court briefly reviewed the legislative and judicial history of the statutorily required liability coverage under an owner's liability insurance policy and made reference to two of the appellate cases which had dealt with the 1967 amendment. *See Insurance Co. v. Broughton*, 283 N.C. 309, 196 S.E. 2d 243 (1973), and *Jernigan v. Insurance Co.*, 16 N.C. App. 46, 190 S.E. 2d 866 (1972). *See also Insurance Co. v. Chantos*, 25 N.C. App. 482, 214 S.E. 2d 438 (1975), where the original permittee's permission to another to drive the car constituted lawful possession by the second permittee so as to afford coverage under the owner's policy, although there was no express or implied permission from the owner.

In *Packer, supra,* there was evidence that an employee of the owner of a truck was instructed to take the truck to his home over the weekend and to pick up other employees on Monday morning to transport them to the job site. The employee did not have permission to drive the truck for his personal use. On Saturday while driving the truck for his personal use, the employee negligently caused injuries to plaintiff. We held that this evidence was sufficient to support a jury verdict finding that the employee was in lawful possession of the truck and to support a judgment holding the owner's liability carrier liable.

Concerning the 1967 amendment, we stated in *Packer:* "Clearly the legislature intended a change in the [owner's] liability insurance coverage previously required by statute." In *Packer,* it was our opinion that the intent of the legislature was that North Carolina should follow no less than the liberal rule discussed in 5 A.L.R. 2d 600, 622, which is set out as follows:

> "The employee need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is 'with permission' though that use may be for a purpose not contemplated by the assured when he parted with possession of the vehicle."

It is argued that by the 1967 amendment to the coverage requirement for an owner's liability insurance policy ("any other person in lawful possession"), the legislature intended that the owner's liability coverage should extend to cover any operator of the owner's vehicle except a thief. However, because of other North Carolina statutes, coverage of "any other person in lawful possession" does not seem to cause such a significant extension of coverage.

At the time of the 1967 amendment to G.S. 20-279.21 (b) (2), which added to those persons insured under an owner's liability insurance policy "any other person in lawful possession" of the owner's vehicle, we had in effect in this State G.S. 20-105 which provided in pertinent part:

> "Any person who drives or otherwise takes and carries away a vehicle, not his own, without the consent of the owner thereof, and with intent to temporarily deprive said owner of his possession of such vehicle, without intent to steal the same, is guilty of a misdemeanor. The consent of the owner of a vehicle to its taking or driving shall not in any case be presumed or implied because of such owner's consent on a previous occasion to the taking or driving of such vehicle by the same or a different person."

Although G.S. 20-105 was repealed by Session Laws 1973, Chapter 1330, Sec. 39, effective January 1, 1975, Sec. 38 of the same Chapter 1330 enacted what now appears as G.S. 14-72.2, also made effective January 1, 1975. General Statute 14-72.2(a) and (b) provide:

> "(a) A person is guilty of an offense under this section if, without the consent of the owner, he takes, operates, or exercises control over . . . a motor vehicle . . . of another.

> "(b) Consent may not be presumed or implied because of the consent of the owner on a previous occasion . . . given to the person charged or to another person."

The current criminal statute, like its predecessor, presents a formidable obstacle to finding a person to be in lawful possession without some prior consent of the owner. We recognize that the current statute (G.S. 14-72.2) has been declared void for vagueness (*State v. Graham,* 32 N.C. App. 601, 233 S.E. 2d 615 (1977); nevertheless, the current statute, like its predecessor, shows a clear legislative intent to make it unlawful for

Ford Marketing Corp. v. Insurance Co.

a person to take or operate the motor vehicle of another without the consent of the owner, and the consent of the owner on a prior occasion does not presume or imply consent on a later occasion.

In the present case it is clear that Melton did not have the consent of either Baucom or Harrington for Melton to take and operate the truck at the time that he did so and at the time of the collision in question. It is now obvious that neither Baucom nor Harrington would have caused Melton to be prosecuted for a violation of the criminal statute. Nevertheless, does Harrington's after-the-fact statement that he would have given Melton permission to use the truck keep Melton's conduct at the time he took and drove the truck from being in violation of the provisions of the criminal statute? It is argued that the close kinship and social ties between Melton and Harrington and the family purpose of the use of the truck by Melton mitigate against Melton's possession of the truck being in violation of the criminal statute, and particularly so in the light of Harrington's after-the-fact expression of consent to Melton's use.

In determining the legislature's intent when it enacted the "any other person in lawful possession" amendment to G.S. 20-279.21(b)(2), we cannot overlook the intent of that same body in its enactment of the popularly called "temporary larceny" and "unauthorized use" statutes (G.S. 20-105, repealed effective 1 January 1975; and G.S. 14-72.2, enacted effective 1 January 1975). Although Melton may not have possessed *mens rea* and although his conduct may not have been *malum in se,* nevertheless, his act was *malum prohibitum* by legislative enactment. The very conduct which constituted the violation of a criminal statute cannot be said to have placed Melton "in lawful possession" for purposes of liability insurance coverage. If the legislature wishes to extend the owner's automobile liability insurance coverage of "any other person in lawful possesson" to encompass the facts of this case, it will have to adapt its criminal statutes to that intent.

Affirmed.

Judges VAUGHN and CLARK concur.