REVCO SOUTHEAST DRUG CENTERS, INC., CARLTON BAXTER, JESSE BEALE, WILLIAM BRANTLEY, BRYON D. KARRON, CHARLES JYLES, GILBERT HARDIS, FRED HOLT, JENNINGS KNIGHT, RICHARD MARX, LESLIE MYERS, CLYDE ROBINSON, JOHN SIMPSON, JAMES STREET, JOHN TINKLER, MORTON TRUGHMAN, EARL WILLIAMS, HENRY WILLIAMS, MARK WILLIAMS, DON DEATON, MYRON WINKELMAN, AND ALBERT SEBOK,

— v. —

THE NORTH CAROLINA BOARD OF PHARMACY, AND THE NORTH CAROLINA PHARMACEUTICAL ASSN.

No. 7410SC21

(Filed 3 April 1974)

1. **Physicians, Surgeons, Etc. § 2— regulation prohibiting advertisement of prescription drugs — constitutionality — summary judgment**

   The trial court erred in granting summary judgment for plaintiffs on the basis of its conclusion that a section of the Code of Professional Conduct for pharmacists which prohibited the advertising of prescription drugs was unconstitutional because it bore no substantial, rational relationship to the public health, safety or general welfare where a factual dispute as to such issue was presented by the pleadings and affidavits.

2. **Constitutional Law § 12; Physicians, Surgeons, Etc. § 2— Code of Professional Conduct for pharmacists — unconstitutionality of enabling statute**

   The statute authorizing the Board of Pharmacy to adopt a "code of professional conduct appropriate to the establishment and main-

tenance of a high standard of integrity and dignity in the practice of the profession of pharmacy," G.S. 90-57.1, constitutes an unlawful delegation of legislative power without sufficient standards and guidelines; consequently, a section of the code adopted by the Board of Pharmacy which prohibited the advertising of prescription drugs is invalid.

APPEAL from *Smith, Judge,* 28 May 1973 Session of WAKE County Superior Court. Argued in the Court of Appeals 19 February 1974.

The plaintiffs, Revco Southeast Drug Centers, Inc., (Revco) and individual pharmacists employed with Revco, brought this action against the North Carolina Board of Pharmacy in the form of a declaratory judgment pursuant to Chapter 1, Article 26, of the General Statutes. The action was brought to have declared unconstitutional G.S. 90-57.1 and Section 8 of the Code of Professional Conduct adopted by the North Carolina Board of Pharmacy pursuant to said statute.

Revco is a foreign corporation authorized to do business in North Carolina. It has a number of retail drug outlets located throughout this state and in other states. Revco regularly advertises the availability of prescription services and various discount plans, including a 10% discount on prescription drugs to those over the age of 60. Various individual plaintiffs who have advertised this senior citizens discount plan in the paper have received letters from the Board stating that such advertising is not consistent with the spirit of the Code and apparently attempting to require compliance with the Board's interpretation of the Code.

The 1969 General Assembly passed an act codified as G.S. 90-57.1 which reads as follows:

Powers of the Board; professional standards.—The Board of Pharmacy shall by regulation and after due notice and hearing, adopt a code of professional conduct appropriate to the establishment and maintenance of a high standard of integrity and dignity in the practice of the profession of pharmacy. In adopting such a code, or any amendment thereto, the Board shall consider the recommendations of the North Carolina Pharmaceutical Association.

Pursuant to the authority contained in this statute, public hearings were held and the Code of Professional Conduct was

adopted by the Board effective 1 January 1971. Section 8 of the Code, the provision under attack by the plaintiffs, reads as follows:

A pharmacist should not solicit professional practice by means of advertising or by methods inconsistent with his opportunity to advance his professional reputation through service to patients and to society.

This section does not affect the commercial element of the traditional community pharmacy or infringe upon legitimate public interest in knowing where professional pharmaceutical services may be obtained. This section has three primary objectives:

(a) To prohibit advertising to the general public, with or without price information, any narcotic drug or any drug or preparation which bears on its label "Caution, federal law prohibits dispensing without prescription"; or any drug or preparation sold pursuant to a health practitioner's prescription; or any drug product the use of which requires the supervision of a health practitioner; and (b) To prohibit the publication or circulation of any statement tending to deceive, misrepresent, or mislead anyone with regard to the practice of pharmacy; or to engage in any fraudulent or deceitful practice or transaction in pharmacy or in the operation or conduct of a pharmacy; and (c) To prohibit the advertising of professional superiority, or claiming the performance of professional services in a superior manner, or the advertising of preferential treatment to any class of persons.

After considering the pleadings in this matter, the interrogatories and their answers, and the affidavits and depositions filed by each side, the trial court entered a judgment in favor of the plaintiffs. From the entry of the judgment, the defendant gave notice of appeal.

*Sanford, Cannon, Adams, and McCullough, by E. D. Gaskins, Jr., Robert W. Spearman and Daniel T. Blue, Jr. for plaintiff-appellee.*

*Bailey, Dixon, Wooten, McDonald, and Fountain, by Kenneth Wooten, Jr. for defendant-appellant.*

Drug Centers v. Board of Pharmacy

CARSON, Judge.

The summary judgment entered by the trial court contained extensive findings of fact and three conclusions of law. To summarize the conclusions of law, the court held as follows: 1. That G.S. 90-57.1 did not grant authority to the Board to regulate the advertising of prescription drugs. 2. That even if the statute did authorize the Board to adopt regulations concerning advertising, it was unconstitutional as an unlawful delegation of legislative power without sufficiently clear standards and guidelines. 3. Even if the legislature did authorize the Board to regulate advertising, and even if such delegation of authority were valid, that the Code was in violation of the North Carolina Constitution and the United States Constitution because there was no substantial, rational relationship to the public health or safety or the general welfare. Based on the findings of fact and the above cited conclusions of law, the court held that Section 8 of the Code is invalid and inoperative and of no force and effect.

[1] We hold that the third conclusion of law entered by the trial court was erroneous. While the plaintiffs had alleged that there was no rational or substantial relationship to the public health and welfare, the defendant in its answer denied this allegation. The defendant further introduced into evidence statements in opposition to the motion for summary judgment. One of these affidavits was from the Dean of the School of Pharmacy at the University of North Carolina at Chapel Hill, and the other was from the Secretary-Treasurer of the North Carolina Board of Pharmacy. Each of these two affidavits stated that restriction of advertising of prescription drugs was in the public interest. A factual dispute was put forth by the pleadings and the affidavits, and it should have been resolved by the court or a jury as appropriate. In any event it was not a subject for summary judgment.

[2] The next question presents a more substantial problem. Assuming, without deciding, that the General Assembly can prohibit the advertising of prescription drugs or special treatment to a class of persons in the selling or administering of said drugs, we are confronted with the question of whether this authority may be delegated to an administrative agency such as the Board of Pharmacy. In the case of *State v. Harris*, 216 N.C. 746, 6 S.E. 2d 854 (1940), our Supreme Court held

that legislative standards must be the guides for administrative agencies in setting forth rules and regulations. There, a dry cleaning board was established to promulgate whatever rules and regulations it decided to be related to public health, safety, and welfare of the people. In that case, at page 754, it was held that:

> In licensing those who desire to engage in professions or occupations such as may be proper subjects of such regulation, the Legislature may confer upon executive officers or bodies the power of granting or refusing to license persons to enter such trades or professions only when it has prescribed a sufficient standard for their guidance. 16 C.J.S., Page 373, and cases cited. Where such a power is left to the limited discretion of a board, to be exercised without the guide of legislative standards, the statute is not only discriminatory, but must be regarded as an attempted delegation of the legislative function offensive both to the State and the Federal Constitution.

Similar results were reached in the *Board of Trade v. Tobacco Co.*, 235 N.C. 737, 71 S.E. 2d 21 (1952), where the Kinston Tobacco Board of Trade had been set up to make "reasonable rules and regulations" for the economic and efficient handling of leaf tobacco sales. While pointing out that the legislature has the authority to regulate within constitutional limits the sale of leaf tobacco, the court held that this is a nondelegable power and that the power to regulate may be delegated to an administrative agency only to the extent of filling in the details within the general scope and express purposes of the statutes prescribing the standards. A similar result was reached in the case of *Harvell v. Scheidt, Comr. of Motor Vehicles*, 249 N.C. 699, 107 S.E. 2d 549 (1959), where the legislature purported to give power to the Department of Motor Vehicles to suspend the license of anyone who was an habitual offender of the traffic laws. Since no guidelines were provided to interpret the words "habitual violator," it was held that this was an unconstitutional delegation of legislative authority.

G.S. 90-57.1 contains no specific guidelines for the Board to follow. It merely refers to the establishment and maintenance of a high standard of integrity and dignity in the practice of the profession. The guidelines, if they can be considered guidelines, do not meet the constitutional standards of certainty to allow the Board to adopt such rules. Without such guidelines,

G.S. 90-57.1 is an unlawful attempt to delegate legislative authority and is in violation of the North Carolina Constitution.

In view of our holding that G.S. 90-57.1 is unconstitutional, we do not decide the remaining questions of whether the General Assembly may prohibit the advertising of prescription drugs or the preferential treatment of certain classes of persons in the sale of such products.

The judgment of the trial court is modified to conform with this opinion and, as so modified, is affirmed.

Chief Judge BROCK and Judge MORRIS concur.