DAVID O. FARLOW, D.C. v. NORTH CAROLINA STATE BOARD OF CHIRO-PRACTIC EXAMINERS

No. 8410SC986

(Filed 6 August 1985)

1. **Physicians, Surgeons and Allied Professions § 6.2— chiropractor—suspension of license—evidence supported findings**

In an action to determine whether appellant chiropractor engaged in unprofessional conduct, there was evidence to support the board's findings that appellant requested insurance information prior to seeing Ms. Byerly and her two children, told Ms. Byerly that she could collect $1,800 and he would receive $1,000, set up a plan of treatment extending over a period of six weeks, told Ms. Byerly that the scheduled treatment would make the injuries look worse and that by the end of the following month the insurance company would be pushing for a settlement, did not ascertain where the passengers were situated in the vehicle that was involved in the collision, diagnosed symptoms which the patients never reported but which the appellant said would appear in several days, did not have positive x-rays when the treatment plan was formulated, had no positive findings from examinations or patients' complaints upon which to base a long range treatment plan, and the patients' complaints and findings upon examinations supported a diagnosis of simple or moderate muscle strain which would be self-limiting requiring minimal therapeutic utilization. There was no prejudicial error in a finding that appellant's diagnosis of all three patients was exactly the same where the evidence showed that the diagnosis of all three patients was very similar.

2. **Physicians, Surgeons and Allied Professions § 6.2— chiropractor—license suspended—no expert testimony—no error**

The evidence and the facts found supported the conclusion of the Board that there was no medical justification for appellant's treatment of three patients, even though appellant was the only medical expert who testified,

because the fact finders in this case were experts who could form opinions based on the evidence.

**3. Administrative Law § 4; Physicians, Surgeons and Allied Professions § 6.1 — suspension of chiropractor's license — decision not timely — no error**

There was no prejudicial error where the Board of Chiropractic Examiners issued a decision to suspend appellant's license 127 days after a hearing and the applicable regulation requires that a decision be rendered within 90 days of the hearing because the result was not changed by the Board's failure to follow its own rule. Parties have the right to require an administrative agency to follow its own rules if its failure to do so would result in a substantial chance that there would be a different result from what the result would have been if the rule were followed. 21 N.C.A.C. § 10.0707(a).

**4. Physicians, Surgeons and Allied Professions § 6 — suspension of chiropractor's license — dishonorable conduct**

The Board of Chiropractic Examiners did not err by suspending appellant's license under 21 N.C.A.C. 10.0301(4) and (6) for dishonorable conduct where that regulation was adopted under the former G.S. 90-154, which referred to dishonorable conduct, the General Assembly rewrote G.S. 90-154 to refer to unethical conduct but did not mention dishonorable conduct, and the Board did not readopt its regulation after the statute was rewritten. The unethical conduct which the statute authorizes the Board to penalize includes dishonorable conduct in which the Board found appellant had engaged.

**5. Constitutional Law § 12.1 — regulation of chiropractors — dishonorable conduct not unconstitutionally vague**

The regulation which requires that chiropractors not engage in dishonorable conduct is not unconstitutionally vague because a chiropractor of ordinary intelligence would not have any difficulty knowing that he was forbidden from prescribing treatment for patients which was not to treat their physical ailments but was to build insurance claims.

**6. Physicians, Surgeons and Allied Professions § 6.1 — suspension of chiropractor's license — composition of Board**

Appellant was not deprived of his right to an impartial decision maker in a hearing which resulted in the suspension of his license where two of the Board members resided in Guilford County, where appellant's office was located, and one of those Board members had told him "Farlow, I'm going to get your license if it's the last thing I ever do." A Board composed of members of the same profession as the person charged is not disqualified because of a financial interest in the case, and appellant waived his right to challenge any member of the Board by not petitioning under 21 N.C.A.C. § 10.610 for the disqualification of a member for personal bias.

**7. Constitutional Law § 7.1 — suspension of chiropractor's license — delegation of power to Board of Chiropractic Examiners not unconstitutional**

The statute which allows the Board of Chiropractic Examiners to suspend the license of a chiropractor for unethical conduct is not an unconstitutional delegation of power by the Legislature because the proscription of unethical

conduct is a sufficiently definite standard so that the Board may set policies within it without exercising a legislative function. Some discretion has to be left to the Board because it would be virtually impossible for the General Assembly to define all possible unethical conduct by chiropractors. G.S. 90-154, Art. I, § 6 of the North Carolina Constitution.

APPEAL by petitioner from *Herring, Judge.* Judgment entered 13 June 1984 in Superior Court, WAKE County. Heard in the Court of Appeals 6 May 1985.

Dr. David O. Farlow has appealed from a judgment of Superior Court which affirmed an order of the North Carolina State Board of Chiropractic Examiners suspending his license to practice for a period of six months. Following a complaint by Ms. Rebecca R. Byerly the North Carolina State Board of Chiropractic Examiners conducted a hearing as to Dr. Farlow's conduct in the practice of chiropractic. Following the hearing the Board on 24 February 1983 entered a decision in which it found facts to the effect that Ms. Byerly and her two children were patients of Dr. Farlow after they had been in an automobile accident and that Dr. Farlow prescribed a course of treatment for them which was not justified by the injuries they had received but was done to inflate insurance claims.

The Board concluded that Dr. Farlow was guilty of unprofessional, dishonest and dishonorable conduct in the practice of chiropractic. The Board ordered that his license be suspended for a period of six months. Dr. Farlow petitioned the Superior Court of Wake County for review, which court affirmed the decision of the Board. Dr. Farlow appealed.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Norman B. Smith and Davison M. Douglas, for petitioner appellant.*

*Harrington & Stultz, by J. Hoyte Stultz, Jr., for respondent appellee.*

WEBB, Judge.

[1] In his first assignment of error the appellant argues that certain findings of fact were not supported by substantial competent evidence in view of the entire record. The Board found as a fact that the appellant requested insurance information prior to seeing Ms. Byerly and her two children. The appellant contends this find-

ing of fact is not supported by the evidence. Ms. Byerly testified that before Dr. Farlow treated her he asked about her insurance. When she told him she had Blue Cross and Blue Shield and gave him the name of the insurance company of the driver of the vehicle that struck her:

> He said—all right. Say my bill is—say you've got $1,000.00 on your medical—on my car insurance. He says, "So there's $1,000.00 you can get," plus if I turn in a thousand dollar bill—all right—the other insurance company is going to pay a thousand. If Blue Cross and Blue Shield pays 80 percent—all right—that's $2,800.00. You make eighteen; I make a thousand.

We believe this evidence supports this finding of fact. Although it is true the Board said the appellant requested insurance information prior to seeing Ms. Byerly we believe it is clear that it intended that he requested the information prior to treating her. The appellant was not prejudiced because the Board used the word "seeing."

The Board made a finding of fact that appellant told Ms. Byerly that she could collect $1,800.00 and he would receive $1,000.00. The appellant contends the evidence on this point was in conflict and the testimony of Ms. Byerly was not credible. The credibility of Ms. Byerly was for the Board. The fact that there was a conflict in the evidence on this point does not mean Ms. Byerly's testimony does not support this finding of fact.

The Board found as a fact that Dr. Farlow set up a plan of treatment for the three patients extending over a period of six weeks, twice a day for two days, once a day for twenty-six days and every other day for twelve days. The appellant contends this finding is inaccurate, incomplete and misleading. He argues that he testified that the treatment plan was only a tentative one. Ms. Byerly testified that was the treatment plan given to her by Dr. Farlow and the Board accepted her testimony as was its prerogative.

The Board found as a fact that the appellant told Ms. Byerly that the schedule would make the injuries "look worse" and that by the end of the following month the insurance company would be "pushing for a settlement." The appellant denied this testi-

mony and he contends that Ms. Byerly's testimony was unbeliev-
able. As we have said, the credibility of Ms. Byerly was for the
Board to determine.

The Board found as a fact that the appellant did not ascertain
where the passengers were situated in the vehicle that was in-
volved in the collision. He contends this finding was erroneous
and is in conflict with two exhibits he introduced. These two ex-
hibits were accidental injury report forms dated 17 March 1982
and showed where the two passengers were sitting in the vehicle.
Ms. Byerly testified that the appellant did not ascertain where
the passengers were located in the vehicle at the time of the acci-
dent. The Board no more had to accept the exhibits as credible
than it did the testimony of appellant.

The Board found as a fact that the appellant's diagnosis of all
three patients was exactly the same for each patient. The ap-
pellant contends this is error because the record shows the diag-
nosis for each patient was different. The appellant is correct in
this argument. We do not believe this was prejudicial error,
however. There were other facts found based on competent evi-
dence which would support the conclusion of the Board. The evi-
dence shows the diagnosis of all three patients was very similar.

The Board found as a fact that the appellant's written
diagnosis includes chest pain and lower back pain, which symp-
toms the patients never reported but which the appellant said
would appear in several days. Ms. Byerly testified to this which
would support this finding of fact.

The Board found as a fact that at the time appellant's treat-
ment plan was formulated there had been no positive x-ray. The
appellant contends that this finding is misleading because the
treatment plan was tentative. As we have said the Board did not
accept the appellant's testimony that the plan was tentative.

The Board found as a fact that at the time Dr. Farlow for-
mulated his plan of treatment, he had no positive findings either
from examinations or patients complaints upon which to have a
long range treatment plan. Ms. Byerly testified that on her first
visit the appellant gave her a schedule for a treatment plan for
her and the three children. Each of them was x-rayed but accord-
ing to her testimony he told her the plan was formulated to make

her injuries and the injuries of the children "look worse" rather than for medical reasons. We believe this testimony supports the finding of fact.

The Board found that the patients' complaints and findings upon examination support a diagnosis of simple or moderate muscle strain which would be self-limiting requiring minimal therapeutic utilization. Ms. Byerly testified the accident occurred on Wednesday and she went to the appellant on that day. She and her children returned on Thursday and she saw a medical doctor on Friday. The medical doctor put her in the hospital for one night. The difficulties she and the children had with their necks and back were gone by Saturday. This testimony supports this finding of fact.

[2] The Board concluded that there was no medical justification for appellant's treatment of his three patients, and that his treatment constituted overutilization and planned gross overutilization of chiropractic services. The appellant contends that he was the only medical expert who testified. He argues that there was no evidence to support this conclusion. He relies on *Warren v. Canal Industries*, 61 N.C. App. 211, 300 S.E. 2d 557 (1983); *Nelson v. Patrick*, 58 N.C. App. 546, 293 S.E. 2d 829 (1982); *Powell v. Shull*, 58 N.C. App. 68, 293 S.E. 2d 259, *disc. rev. denied*, 306 N.C. 743, 295 S.E. 2d 479 (1982); *Ballance v. Wentz*, 22 N.C. App. 363, 206 S.E. 2d 734, *aff'd*, 286 N.C. 294, 210 S.E. 2d 390 (1974) for the proposition that expert testimony is required to prove a departure from applicable standards of care in actions against health care providers. The cases cited by the appellant are civil actions tried before a jury. Expert testimony is required in order for laymen to reach a verdict. In this case the fact finders are experts. They can form opinions based on the evidence. The evidence and the facts found support the conclusion they reached.

The appellant's first assignment of error is overruled.

[3] The appellant next contends that it was error for the Superior Court to affirm the order of the Board because the Board's decision was not timely made. The applicable regulation, 21 N.C.A.C. § 10.0707(a), contains a provision that a decision of the Board "must be rendered within 90 days after the hearing." The Board's decision was issued 127 days after the hearing. The appellant argues that the decision of the Board is null and void.

He relies on *Refining Co. v. Board of Aldermen*, 284 N.C. 458, 202 S.E. 2d 129 (1974); *Snow v. Board of Architecture*, 273 N.C. 559, 160 S.E. 2d 719 (1968); *In re Trulove*, 54 N.C. App. 218, 282 S.E. 2d 544 (1981), *disc. rev. denied*, 304 N.C. 727, 288 S.E. 2d 808 (1982), and *Parrish v. Real Estate Licensing Board*, 41 N.C. App. 102, 254 S.E. 2d 268 (1979). None of the cases involve an administrative board's failure to follow its own rules. *Trulove* and *Parrish* are cases in which an administrative board did not comply with a statute. In *Snow* our Supreme Court said that an administrative board "loses its authority to render a decision at the expiration of 90 days from the date of hearing and an order entered thereafter is a nullity." This statement was based on G.S. 150-20 which has since been repealed. *Refining Co.* deals with a municipal ordinance. In that case our Supreme Court quoted from 2 Am. Jur. 2d Administrative Law § 350 (1962) which says:

> Procedural rules are binding upon the agency which enacts them as well as upon the public of the agency, and the agency does not, as a general rule, have the discretion to waive, suspend, or disregard in a particular case a validly adopted rule so long as such rule remains in force.

The parties have not cited in their briefs and we have not found a North Carolina case which deals with the power of an administrative agency not to follow its own rules. There have been cases in the federal courts dealing with this question. *See American Farm Lines v. Black Ball Freight*, 397 U.S. 532, 25 L.Ed. 2d 547, 90 S.Ct. 1288 (1970); *Vitarelli v. Seaton*, 359 U.S. 535, 3 L.Ed. 2d 1012, 79 S.Ct. 968 (1959); *Service v. Dulles*, 354 U.S. 363, 1 L.Ed. 2d 1403, 77 S.Ct. 1152 (1957); and *United States v. Shaughnessy*, 347 U.S. 260, 98 L.Ed. 681, 74 S.Ct. 499 (1954). We believe the rule from these cases is that a party has the right to require an administrative agency to follow its own rules if its failure to do so would result in a substantial chance that there would be a different result from what the result would be if the rule were followed. This insures that those who appear before a board will be treated equally. We believe this rationale is sound.

In this case the result was not changed because the Board did not follow its own rule. We do not believe it was prejudicial error for the Board not to do so. The appellant's second assignment of error is overruled.

[4]   In his third assignment of error the appellant contends the regulation upon which the Board based its decision exceeded the statutory authority of the Board. The regulation, 21 N.C.A.C. 10.0301(4) and (6) is to the effect that a doctor of chiropractic "shall be honest, be of good moral deportment . . . [and] not engage in immoral or dishonorable conduct." The regulation was adopted pursuant to G.S. 90-154, which provided:

> The Board of Chiropractic Examiners may suspend or refuse to grant or may revoke a license to practice chiropractic in this State, upon the following grounds: immoral conduct, bad character, the conviction of a crime involving moral turpitude, habitual intemperance in the use of ardent spirits, narcotics, or stimulants to such an extent as to incapacitate him or her for the performance of such professional duties, unethical advertising, unprofessional or dishonorable conduct unworthy of and affecting the practice of his profession.

Before the charges were filed against the appellant the General Assembly rewrote G.S. 90-154 to provide in part:

> (a) The Board of Chiropractic Examiners may impose any of the following sanctions, singly or in combination, when it finds that a practitioner or applicant is guilty of any offense described in subsection (b):
>
>     . . . .
>
> (2) Suspend a license to practice chiropractic;
>
>     . . . .
>
> (b) The following are grounds for disciplinary action by the Board under subsection (a):
>
>     . . . .
>
> (4) Unethical conduct in the practice of the profession as defined by rule or regulation of the Board.
>
>     . . . .

The Board did not readopt its regulation after the statute was rewritten by the General Assembly. The Board in this case found the appellant had engaged in dishonorable conduct under its regulations. The appellant contends that the new statute does not

mention dishonorable conduct and the regulation which the Board found he had violated exceeds the statutory authority of the Board. We hold that "unethical conduct" which the statute authorizes the Board to penalize includes "dishonorable conduct" in which the Board found the appellant had engaged. The Board was authorized by the statute to make this regulation. The appellant's third assignment of error is overruled.

[5]   In his fourth assignment of error the appellant contends the regulation which he was found to have violated is unconstitutionally vague.

> "[T]he terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. . . . [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

*State v. Graham*, 32 N.C. App. 601, 605, 233 S.E. 2d 615, 618-19 (1977) (*quoting Connally v. General Construction Co.*, 269 U.S. 385, 391, 70 L.Ed. 322, 328, 46 S.Ct. 126, 127 (1926)). The appellant argues the terms "honest," "good moral deportment," "immoral conduct," and "dishonorable conduct" are extremely general, vague and uncertain terms which mean different things to different people. In this case we are concerned only with "dishonorable conduct" in which the appellant was found to have engaged. We do not believe a chiropractor of ordinary intelligence would have any difficulty telling that under the regulation prohibiting dishonorable conduct he was forbidden from prescribing treatment for patients which was not to treat their physical ailments but was to build up insurance claims. The appellant's fourth assignment of error is overruled.

[6]   In his fifth assignment of error the appellant argues that because of the composition of the Board he was deprived of his right to an impartial decision maker. Two of the Board members resided in Guilford County, one in High Point, which is the location of appellant's office, and the other in Greensboro. Appellant argues each of them stood to "benefit financially in a direct and powerful way from the suspension of appellant's license." The ap-

pellant testified in Superior Court that in March 1981, Dr. Barbour, the Board member who resides in High Point told him, "Farlow, I'm going to get your license if it's the last thing I ever do."

We do not believe we should hold that a Board composed of the members of the same profession as the person charged is disqualified because of a financial interest in the case. The appellant had the right under 21 N.C.A.C. § 10.610 to petition for the disqualification of any member of the Board for personal bias. He did not do so. We hold he thus waived the right to challenge Dr. Barbour or any other member of the Board. The appellant's fifth assignment of error is overruled.

[7]  In his sixth and last assignment of error the appellant contends that G.S. 90-154 which allows the Board to suspend the license of a chiropractor for "unethical conduct" is an unconstitutional delegation of power by the legislature. Article 1 § 6 of the Constitution of North Carolina provides: "The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." This section has been interpreted to mean that the General Assembly cannot delegate to an administrative board the power to legislate. If the General Assembly sets a policy and gives an administrative board the power to find facts which enable the board to carry out the legislative policy this is not a delegation of legislative power. *See State ex rel. Utilities Comm. v. Nantahala Power & Light Co.*, 65 N.C. App. 198, 213-14, 309 S.E. 2d 473, 484-85 (1983), *aff'd*, 313 N.C. 614, --- S.E. 2d --- (filed 3 July 1985). The General Assembly must prescribe the standard for an administrative board with sufficient definiteness so that the board is bound by the legislative policy and cannot under the name of finding facts actually set the policy. *See Martin v. Housing Corp.*, 277 N.C. 29, 175 S.E. 2d 665 (1970).

The appellant relies on *Harvell v. Scheidt, Comr. of Motor Vehicles*, 249 N.C. 699, 107 S.E. 2d 549 (1959); *State v. Harris*, 216 N.C. 746, 6 S.E. 2d 854 (1940) and *Drug Centers v. Board of Pharmacy*, 21 N.C. App. 156, 204 S.E. 2d 38 (1974) and argues that by leaving it to the Board to define "unethical conduct" as used in G.S. 90-154 the General Assembly has not provided the Board with guidelines which are sufficiently definite. For this reason he

argues that it is the Board which determines the policy as to when a chiropractor's license may be suspended. This, the appellant argues, is an unconstitutional delegation of legislative power. In *Harris* our Supreme Court reversed the conviction of a person for engaging in the business of dry cleaning without first obtaining a license to do so. The State Dry Cleaners Commission had been established which was empowered to "require examination of persons not entitled to have issued to them a license as provided in this act, such examination to cover subjects deemed necessary to promote the public health, safety and welfare of the people of the State of North Carolina." Our Supreme Court held the discretion given to Dry Cleaners Commission was so broad that it enabled the Commission to set policy rather than follow the policy of the legislature. In *Drug Centers* this Court held that a statute which granted the North Carolina Board of Pharmacy the authority to "adopt a code of professional conduct appropriate to the establishment and maintenance of a high standard of integrity and dignity in the practice of the profession of pharmacy" did not set a sufficient standard of definiteness and was a delegation of legislative power. In *Harvell* our Supreme Court held it was an unconstitutional delegation of legislative power for the General Assembly to authorize the Commissioner of Motor Vehicles to suspend a driver's license when the Commissioner found a person to be "an habitual violator of the traffic laws." The Supreme Court said the statute:

> [D]oes not contain any fixed standard or guide to which the Department must conform in order to determine whether or not a driver is an habitual violator of the traffic laws. But, on the contrary, the statute leaves it to the sole discretion of the Commissioner of the Department to determine when a driver is an habitual violator of such laws.

*Harvell, supra,* at 706, 107 S.E. 2d at 554.

In reaching our decision on this point we are guided by some of the language of *Adams v. N.E.R.*, 295 N.C. 683, 698, 249 S.E. 2d 402, 411 (1978), in which it is said:

> When there is an obvious need for expertise in the achievement of legislative goals the General Assembly is not required to lay down a detailed agenda covering every conceivable problem which might arise in the implementation

of the legislation. It is enough if general policies and standards have been articulated which are sufficient to provide direction to an administrative body possessing the expertise to adapt the legislative goal to varying circumstances.

The Court in that case also said in determining whether there were sufficient guiding standards it is appropriate to consider whether there are procedural safeguards because procedural safeguards tend to encourage adherence to legislative standards. *Id.* Relying in part on the reasoning of *Adams* we hold there has not been an unconstitutional delegation of power in this case. There is a need for expertise in administering the chiropractic profession. We believe the proscription of "unethical conduct" is a sufficiently definite standard so that the Board may set policies within it without exercising a legislative function.

We believe the cases upon which the appellant relies are distinguishable. The promotion of "the public health, safety, and welfare" in *Harris* is obviously broader than the standard of this case as is the "maintenance of a high standard of integrity and dignity" of *Drug Centers*. In *Harvell* it would have been a simple matter for the General Assembly to define an "habitual violator of the traffic laws" rather than leaving the definition to the Commissioner of Motor Vehicles. In this case it would be virtually impossible for the General Assembly to define all possible "unethical conduct" by chiropractors. Some discretion has to be left to the Board. The appellant's sixth assignment of error is overruled.

Affirmed.

Chief Judge HEDRICK and Judge WHICHARD concur.