IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-956

 Filed: 16 August 2016

New Hanover County, No. 14 CVS 4546

KEVIN J. TULLY, Plaintiff,

 v.

CITY OF WILMINGTON, Defendant.

 Appeal by Plaintiff from judgment entered 1 May 2015 by Judge Gary E.

Trawick in New Hanover County Superior Court. Heard in the Court of Appeals 29

March 2016.

 Tin Fulton Walker & Owen, PLLC, by Katherine Lewis Parker, for Plaintiff.

 Cranfill Sumner & Hartzog LLP, by Katie Weaver Hartzog, for Defendant.

 The McGuinness Law Firm, by J. Michael McGuinness, for amici curiae the
 Southern States Police Benevolent Association and the North Carolina Police
 Benevolent Association.

 STEPHENS, Judge.

 Plaintiff, a city police officer, appeals from the trial court’s judgment on the

pleadings in favor of Defendant, his employer, foreclosing Plaintiff’s claims for

violation of his State constitutional rights to substantive due process and equal

protection as a result of Defendant’s failure to comply with its own rules and policies

regarding its promotion process. Because we hold that Plaintiff has alleged a valid
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

property and liberty interest in requiring Defendant to comply with its own

established promotional process, we reverse the order of the trial court.

 Factual and Procedural Background

 Since 2000, Plaintiff Kevin J. Tully has been employed with the Wilmington

Police Department (“the WPD”), a department of Defendant the City of Wilmington.

He obtained the rank of Corporal in June 2007. In 2008, Tully was assigned to the

WPD’s Violent Crimes Section (“the VCS”), investigating major cases involving, inter

alia, alleged rape, robbery, homicide, and sexual assault. As part of the VCS, through

2014, Tully worked on more than fifty homicide cases with a one hundred percent

clearance rate in those for which he served as lead investigator. In 2011, Tully was

named Wilmington Police Officer of the Year, and, in 2014, he was awarded the

“Public Safety Officer Medal of Valor,” the highest award given to a police officer in

the United States.

 The events giving rise to this case began in the fall of 2011, when Tully decided

to seek promotion to the rank of Sergeant, following the policies and procedures

established by the WPD. The promotion process involves several phases, beginning

with a written examination. According to the WPD’s policy on promotions, only

candidates scoring in the top 50th percentile of those taking the written examination

may advance to the next phase of the promotional process. The top-scoring one-third

of candidates who complete all specified phases are then placed on an eligibility list

 -2-
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

for promotion, which is then provided to the Chief of Police. The Chief of Police

reviews a file on each promotion-eligible candidate, which may include, inter alia,

materials regarding supervisory evaluation ratings, length of service, educational

background, current position, commendations and awards, and disciplinary actions.

From the candidates whose files he reviews, the Chief of Police selects officers for

promotion. Finally, the Chief’s selections must be approved by the City Manager.

 In the fall of 2011, Tully sat for the written examination for promotion to the

rank of Sergeant and thereafter was notified that he had failed it, thus barring Tully

from moving forward in the promotion process. However, Tully alleges that, when he

reviewed a copy of the purportedly correct answers for the written examination, he

realized that several of the “correct” answers were based on outdated law,

particularly regarding searches and seizures. Thus, Tully alleges that other

candidates for the position of Sergeant who answered those examination questions

“correctly”—meaning their answers matched the official test answers—and therefore

advanced in the promotional process, had actually revealed an incorrect

understanding of some areas of the current law in our State. Meanwhile, Tully, who

actually demonstrated an understanding of the current law on those issues, was

disqualified from advancing to the next phase of the WPD’s promotion process.

 Noting that the WPD’s promotional policy provided that “[c]andidates [for

promotion] may appeal any portion of the selection process[,]” Tully grieved this issue

 -3-
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

of the outdated examination answers through the WPD’s internal grievance

procedure. On 3 January 2012, Tully was informed by the City Manager that his

grievance was denied because the examination answers were not a grievable item.

 On 30 December 2014, Tully filed his complaint in this action, alleging claims

for violations of his due process rights under the Equal Protection and “fruits of their

own labor” clauses of the North Carolina Constitution. On 15 March 2015, the City

filed its answer to the complaint, along with a motion for judgment on the pleadings

pursuant to Rule of Civil Procedure 12(c). The City’s motion was heard at the 8 April

2015 session of New Hanover County Superior Court, the Honorable Gary E. Trawick,

Judge presiding. Following the hearing, the trial court granted the City’s motion and

dismissed Tully’s complaint in its entirety. A written judgment dismissing the case

with prejudice was entered on 1 May 2015. From that judgment, Tully timely

appealed.

 Discussion

 On appeal, Tully argues that the trial court erred in granting the City’s motion

and entering judgment against Tully on the pleadings. We agree.

I. Standard of review

 North Carolina Rule of Civil Procedure 12(c), provides that, “[a]fter the

pleadings are closed but within such time as not to delay the trial, any party may

move for judgment on the pleadings.” N.C. Gen. Stat. § 1A-1, Rule 12(c) (2015).

 -4-
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

“Judgment on the pleadings is not favored by law[,] and the trial court is required to

view the facts and permissible inferences in the light most favorable to the

nonmovant.” Carpenter v. Carpenter, 189 N.C. App. 755, 762, 659 S.E.2d 762, 767

(2008) (citation omitted). “A motion for judgment on the pleadings [pursuant to Rule

12(c)] should not be granted unless the movant clearly establishes that no material

issue of fact remains to be resolved and that he is entitled to judgment as a matter of

law.” B. Kelley Enters., Inc. v. Vitacost.com, Inc., 211 N.C. App. 592, 593, 710 S.E.2d

334, 336 (2011) (citation and internal quotation marks omitted; emphasis added).

When ruling on a motion for judgment on the pleadings, “[a]ll allegations in the

nonmovant’s pleadings, except conclusions of law, legally impossible facts, and

matters not admissible in evidence at the trial, are deemed admitted by the movant

. . . .” Ragsdale v. Kennedy, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974) (citations

omitted). “This Court reviews a trial court’s grant of a motion for judgment on the

pleadings de novo.” Carpenter, 189 N.C. App. at 757, 659 S.E.2d at 764 (citation

omitted).

II. Tully’s constitutional claims

 As an initial matter, we must clarify the bases for Tully’s claims that his

constitutional rights have been violated. Our review of the record reveals that, both

in the trial court and on appeal, the City has consistently attempted to reframe

Tully’s claims as assertions of a property and liberty interest in receiving a promotion,

 -5-
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

a position that, as the City accurately observes, is not supported by precedent.

However, Tully’s actual claim is that the City violated Tully’s constitutional rights by

failing to comply with its own policies and procedures regarding the promotional

process. In other words, as Tully states in his reply brief, he

 is not arguing that he has an absolute property interest in
 being promoted. Rather, he is arguing that if the
 government has a process for promotion of its employees,
 particularly law enforcement officers who are sworn to
 uphold and apply the law to ordinary citizens, that process
 cannot be completely arbitrary and irrational without
 running afoul of the North Carolina Constitution.

(Emphasis added). Thus, before addressing the pertinent case law we find persuasive

in support of Tully’s position, we review the details of his claims and allegations.

 In his complaint, citing Article I, section 19 of our State’s Constitution

(containing the “law of the land” and “Equal Protection” clauses),1 Tully first alleged

that, “[b]y denying [Tully’s] promotion due to his answers on the Sergeant’s test and

then determining that such a reason was not grievable, the City arbitrarily and

irrationally deprived [Tully] of property in violation of the law of the land, in violation

of the North Carolina Constitution.” (Emphasis added). Similarly, citing Article I,

1 “No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or
outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the
land. No person shall be denied the equal protection of the laws . . . .” N.C. Const. art. I, § 19.

 -6-
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

section 1 (containing the “fruits of their own labor” clause),2 Tully further alleged

that, “[b]y denying [Tully’s] promotion due to his answers on the Sergeant’s test and

then determining that such a reason was not grievable, the City arbitrarily and

irrationally deprived [Tully] of [the] enjoyment of the fruits of his own labor, in

violation of the North Carolina Constitution.” (Emphasis added).

 Specifically, Tully contends that the City violated his property and liberty

interests in an equal and non-arbitrary promotional opportunity under Article I,

sections 1 and 19 of the North Carolina Constitution by failing to comply with its own

promotional policies and procedures in two respects. First, Tully alleges that the City

administered a written Sergeant’s examination that included questions based upon

incorrect and outdated law such that, although Tully answered certain questions

accurately based on the correct and existing law, those answers were marked wrong,

causing Tully to fail the examination and score below the 50th percentile of

candidates, thereby barring him from proceeding to the next stage of the promotional

process.3 Tully contends that the use of a Sergeant’s test based on outdated and

incorrect law violates specific promotional policies promulgated by the City.

2 “We hold it to be self-evident that all persons are created equal; that they are endowed by their
Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits
of their own labor, and the pursuit of happiness.” N.C. Const. art. I, § 1.

3 As noted supra, the City’s alleged use of outdated law on the examination would also have caused
other applicants for promotion to receive credit for correct answers even where their answers were in
reality wrong. Thus, the City’s alleged use of a flawed Sergeant’s examination doubly disadvantaged

 -7-
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

 The record on appeal includes a copy of a document entitled “Wilmington Police

Department Policy Manual / Directive 4.11 Promotions / Effective: 02/24/2005

Revised: 07/25/2011” (“the manual”).4 The manual states that its purpose is to

“establish[] uniform guidelines that govern promotional procedures within the

Wilmington Police Department and ensure[] procedures used are job-related and non-

discriminatory” with “the objective of . . . provid[ing] equal promotional opportunities

to all members of the Police Department based on a candidate’s merit, skills,

knowledge, and abilities . . . .” (Emphasis added). In order to achieve this goal, per

Policy A.1.c of the manual, the Chief of Police is responsible for “[c]onducting a review

of the promotional process prior to each promotional opening to ensure [that] the

selection of the qualified candidates is done in a fair and equitable manner.”

(Emphasis added). In addition, under Policy B.1.c of the manual, the Chief of Police

must

 establish screening devices, to include written
 examinations . . . . specific to the vacancy, [including
 p]roviding written examination instruments using both
 job and task analysis specific to the Wilmington Police
 Department or by using nationally recognized
 instruments. All instruments used shall have

Tully, in that, not only was his score wrongly lowered, but other applicants’ scores were wrongly raised.
In light of the City’s policy that only applicants in the top half of scorers could advance in the
promotional process, the use of an allegedly flawed examination was highly prejudicial to Tully.

4 The manual was attached to the City’s answer as Exhibit 1 and thus was before the trial court.

 -8-
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

 demonstrated content and criterion validity,5 which is
 accomplished by contracting with qualified outside
 entities to develop the written testing instruments.
 Instruments will assess candidate’s knowledge, skills and
 abilities as related to the promotional position. Work
 sample exercises will be internally validated using
 Wilmington Police Department subject matter experts.

(Emphasis added).

 As part of his first constitutional claim, Tully has alleged that the City violated

its own policies by administering a written examination based on outdated and

inaccurate law such that it did not assess “a candidate’s merit, skills, knowledge, and

abilities.” The hearing transcript makes clear that, despite the City’s consistent focus

on case law establishing that employees do not have a property or liberty interest in

receiving a promotion, Tully’s trial counsel clarified that his claims were based on the

City’s failure to provide a non-arbitrary promotional process in regard to the allegedly

outdated test materials: “[T]o deny [Tully] his right to pursue [a promotion] based on

an arbitrary test that is absolutely contrary to the public interest[,]. . . interfering

with [his] fundamental right to the fruits of [his] own labor . . . .” (Emphasis added).

5 “Content validity addresses the match between test questions and the content or subject area they
are intended to assess.” The College Board,
https://research.collegeboard.org/services/aces/validity/handbook/evidence (last visited 25 July 2016).
“Criterion-related validity looks at the relationship between a test score and an outcome.” Id. “The
College Board is a mission-driven not-for-profit organization that connects students to college success
and opportunity. . . . Each year, the College Board helps . . . students prepare for a successful transition
to college through programs and services in college readiness and college success—including the SAT
and the Advanced Placement Program.” See The College Board, https://www.collegeboard.org/about
(last visited 25 July 2016).

 -9-
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

 The second violation of his constitutional rights alleged by Tully concerns the

City’s failure to follow its own grievance policy in regard to the promotional process.

Policy F.1 of the manual provides that “[c]andidates [for promotion] may appeal any

portion of the selection process. . . .” (Emphasis added). Again, at the hearing, Tully’s

counsel noted that the City placed “significant emphasis on policies and their officers

following policies, invit[ed] [Tully] to grieve [his allegations regarding the flawed test

questions] and walk[ed] him through the process and then just walk[ed] all over him

at the end and [said], well, you didn’t really have a grievable item anyway . . . .”

(Emphasis added).

 In sum, Tully’s constitutional claims are not based upon an assertion that he

was entitled to receive a promotion to the rank of Sergeant, but simply that he was

entitled to a non-arbitrary and non-capricious promotional process. Tully’s

argument—that a government employer that fails to follow its own established

promotional procedures acts arbitrarily, and thus, unconstitutionally—appears to be

one of first impression in this State. However, it is supported by persuasive federal

case law and is in keeping with our State’s constitutional jurisprudence.

III. Analysis

 Arbitrary and capricious acts by government are . . .
 prohibited under the Equal Protection Clause[] of . . . the
 North Carolina Constitution[]. No government shall deny
 any person within its jurisdiction the equal protection of
 the laws. The purpose of the Equal Protection Clause . . .
 is to secure every person within the [S]tate’s jurisdiction

 - 10 -
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

 against intentional and arbitrary discrimination, whether
 occasioned by express terms of a statute or by its improper
 execution through duly constituted agents.

Dobrowolska v. Wall, 138 N.C. App. 1, 14, 530 S.E.2d 590, 599 (2000) (citations and

internal quotation marks omitted; emphasis added), disc. review allowed, 352 N.C.

588, 544 S.E.2d 778 (2000), disc. review improvidently allowed in part and appeal

dismissed ex mero motu in part, 355 N.C. 205, 558 S.E.2d 174 (2002). Likewise,

“irrational and arbitrary” government actions violate the “fruits of their own labor”

clause. See, e.g., Treants v. Onslow Cty., 83 N.C. App. 345, 354, 350 S.E.2d 365, 371

(1986) (citations omitted), affirmed, 320 N.C. 776, 360 S.E.2d 783 (1987).

 In this light, we find highly persuasive the rule discussed and applied by the

Fourth Circuit Court of Appeals in United States v. Heffner:

 An agency of the government must scrupulously observe
 rules, regulations, or procedures which it has established.
 When it fails to do so, its action cannot stand and courts
 will strike it down. This doctrine was announced in United
 States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.
 Ct. 499, 98 L. Ed. 681 (1954). There, the Supreme Court
 vacated a deportation order of the Board of Immigration
 because the procedure leading to the order did not conform
 to the relevant regulations. The failure of the Board and of
 the Department of Justice to follow their own established
 procedures was held a violation of due process.

420 F.2d 809, 811-12 (4th Cir. 1969); see also Poarch v. N.C. Dep’t of Crime Control &

Pub. Safety, 223 N.C. App. 125, 133, 741 S.E.2d 315, 320 (2012) (citing Heffner with

approval), disc. review denied, 366 N.C. 419, 735 S.E.2d 174 (2012). In Heffner, the

 - 11 -
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

defendant appealed after he was convicted of “two counts of wilfully furnishing to his

employer . . . false and fraudulent statements of federal income tax withholding

exemptions” in violation of federal law. 420 F.2d at 810. The Fourth Circuit reversed

the defendant’s convictions, noting that the Internal Revenue Service (“IRS”) had

“issued instructions to all Special Agents of the Intelligence Division. . . . describ[ing]

its procedure for protecting the Constitutional rights of persons suspected of criminal

tax fraud, during all phases of its investigations[,]” but that the Special Agent who

interrogated the defendant had failed to comply with those procedures. Id. at 811

(citation and internal quotation marks omitted). The Court explained that it was “of

no significance that the procedures or instructions which the IRS has established

[were] more generous than the [United States] Constitution requires. . . . [n]or . . .

that these IRS instructions to Special Agents were not promulgated in something

formally labeled a ‘Regulation’ or adopted with strict regard to the [federal]

Administrative Procedure Act . . . .” Id. at 812 (citations omitted). The critical point

is that the constitutional violation was demonstrated by “the arbitrariness which is

inherently characteristic of an agency’s violation of its own procedures.” Id. (emphasis

added). Additionally, “[t]he Accardi doctrine . . . requires reversal irrespective of

whether a new trial will produce the same verdict.” Id. at 813.

 Although as noted supra, this appeal presents a matter of first impression in

our State courts, courts in other jurisdictions have considered similar arguments

 - 12 -
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

made by government employees and have reached the same result we reach here.

See, e.g., McCourt v. Hampton, 514 F.2d 1365 (4th Cir. 1975) (applying the reasoning

of Heffner where a civilian employee of the United States Army Aviation Systems

Command alleged his government employer acted arbitrarily in violating its own

rules); Sumler v. Winston-Salem, 448 F. Supp. 519 (M.D.N.C. 1978) (citing Heffner

with approval where a recreation department employee alleged his government

employer acted arbitrarily in violating its own rules); Burnaman v. Bay City Indep.

Sch. Dist., 445 F. Supp. 927 (S.D. Tex. 1978) (applying the reasoning of Heffner where

a public school vocational counselor alleged his government employer acted

arbitrarily in violating its own rules); Bd. of Educ. v. Ballard, 507 A.2d 192 (Md. App.

1986) (applying the reasoning of Heffner and Accardi where a public school librarian

alleged her government employer acted arbitrarily in violating its own rules); Bd. of

Educ. v. Barbano, 411 A.2d 124 (Md. App. 1980) (applying the reasoning of Heffner

and Accardi where a public school teacher alleged her government employer acted

arbitrarily in violating its own rules). While not mandatory authority, these decisions

present a convincing case supporting our adoption of the Heffner rule in this matter.

 In addition, while we have found no case from our State’s appellate courts

applying the rule of Heffner and Accardi in the context of a government entity alleged

to have failed to follow its own established procedures in a matter where, as here,

 - 13 -
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

that allegation is the sole basis to establish a property or liberty interest, this Court

has noted this concept with approval in dictum:

 The parties have not cited in their briefs and we have not
 found a North Carolina case [that] deals with the power of
 an administrative agency not to follow its own rules. There
 have been cases in the federal courts dealing with this
 question. We believe the rule from these cases is that a
 party has the right to require an administrative agency to
 follow its own rules if its failure to do so would result in a
 substantial chance that there would be a different result
 from what the result would be if the rule were followed.
 This insures that those who appear before a board will be
 treated equally. We believe this rationale is sound.

Farlow v. N.C. State Bd. of Chiropractic Exam’rs, 76 N.C. App. 202, 208, 332 S.E.2d

696, 700 (1984) (citations omitted), disc. review denied and appeal dismissed, 314

N.C. 664, 336 S.E.2d 621 (1985). In Farlow, the plaintiff “appealed from a judgment

. . . affirm[ing] an order of the North Carolina State Board of Chiropractic Examiners

[(“the Board”)] suspending his license to practice for a period of six months[,]” arguing

that the Board failed to render its decision within 90 days of the plaintiff’s

disciplinary hearing as its rules required. Id. at 204, 207, 332 S.E.2d at 697, 699-70.

This Court overruled the appellant’s argument after determining that “the result was

not changed because the Board did not follow its own rule[,]” and thus the Board’s

failure to follow its own rules was not prejudicial to the plaintiff. Id. at 208, 332

S.E.2d at 670.

 - 14 -
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

 While the Court in Farlow considered prejudice, whereas the Heffner and

Accardi decisions explicitly held that prejudice was irrelevant, this distinction is not

pertinent here where Tully’s appeal is before us from a dismissal on the pleadings.

We cite Farlow merely to demonstrate that this Court has previously found the

“rationale . . . sound” that a government entity should follow its own established

procedures and rules to ensure equal treatment. See id. at 208, 332 S.E.2d at 700.

In line with the reasoning discussed in Accardi, Heffner, and Farlow,6 we now hold

that it is inherently arbitrary for a government entity to establish and promulgate

policies and procedures and then not only utterly fail to follow them, but further to

claim that an employee subject to those policies and procedures is not entitled to

challenge that failure.7 To paraphrase Tully, if a government entity can freely

6While decisions interpreting the United States Constitution, like Heffner and Accardi, do not bind
North Carolina courts on issues of North Carolina constitutional law, see e.g., Evans v. Cowan, 122
N.C. App. 181, 183-84, 468 S.E.2d 575, 577 (1996), we find their reasoning highly persuasive on this
matter of first impression.

7 Compare N.C. Dep’t of Pub. Safety v. Owens, __ N.C. App. __, 782 S.E.2d 337 (2016). In that case,
the Highway Patrol placed a patrol sergeant on administrative duty during which time the Highway
Patrol did not permit him “to complete the firearms training or other training which were required to
maintain his credentials” and then, after the administrative duty period ended, fired the sergeant
“based [in part] on . . . his loss of certain credentials necessary to perform” his job duties. Id. at __,
782 S.E.2d at 341. On appeal, this Court affirmed the reversal of the sergeant’s termination, noting:

 The Administrative Code may allow for an employee to be terminated
 without prior warning for the failure to maintain required credentials;
 however, an employee so terminated is entitled to relief . . . where the
 employer-agency acts arbitrarily and capriciously in terminating him
 on this basis. Here, . . . the Highway Patrol acted arbitrarily and
 capriciously in terminating [the sergeant] on the basis of loss of
 credentials. For instance, it was arbitrary and capricious for the

 - 15 -
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

disregard its policies at its discretion, why have a test or a grievance process or any

promotional policies at all?

 In reaching this holding, we emphasize that the questions before the trial court

in ruling on the City’s motion for judgment on the pleadings and now before this Court

on appeal are not whether the City did violate its own promotional policies and

procedures and whether Tully should prevail in this matter. Instead, the dispositive

questions before us are whether Tully has sufficiently alleged claims of arbitrary and

capricious action by the City in its failure to follow its own procedures and whether

the City has established on the pleadings “that no material issue of fact remains to

be resolved and that he is entitled to judgment as a matter of law.” See B. Kelley

Enters., Inc., 211 N.C. App. at 593, 710 S.E.2d at 336 (citation and internal quotation

marks omitted). For the reasons discussed supra, we conclude that Tully has

sufficiently alleged constitutional claims and that genuine issues of material fact

remain to be resolved. Accordingly, to permit Tully to engage in discovery and

present a forecast of evidence to support his allegations of arbitrary and capricious

 Highway Patrol to prevent [the sergeant] from taking his annual
 firearms training (necessary to retain his credentials), though the
 Highway Patrol was under no disability to allow the training to take
 place, and then terminate [the sergeant] for his failure to complete said
 training.

Id. at __, 782 S.E.2d at 342-43.

 - 16 -
 TULLY V. CITY OF WILMINGTON

 Opinion of the Court

action in the City’s failure to follow its own policies and procedures regarding

promotions, we reverse the trial court’s order.

 REVERSED.

 Judge McCULLOUGH concurs.

 Judge BRYANT dissents by separate opinion.

 - 17 -
 No. COA15-956 – Tully v. City of Wilmington

 BRYANT, Judge, dissenting.

 The majority states

 the dispositive questions before us are whether Tully has
 sufficiently alleged claims of arbitrary and capricious
 action by the City in its failure to follow its own procedures
 and whether the City has established on the pleadings
 “that no material issue of fact remains to be resolved and
 that he is entitled to judgment as a matter of law.” See B.
 Kelley Enters., Inc., 211 N.C. App. at 593, 710 S.E.2d at 336
 (citation and internal quotation marks omitted).

 The majority also acknowledges this is an issue of first impression, as our

courts have never held that a governmental employer that fails to follow its own

established procedures acts arbitrarily and, therefore, unconstitutionally. Because

the City is acting as an employer rather than as a sovereign, and is vested with the

power to manage its own internal operations, Tully’s pleadings—although asserting

what appears to be an unfair result in a standard process—do not state a viable

constitutional claim. Therefore, I respectfully dissent.

 Tully alleged in his complaint that denying him a promotion “due to his

answers on the test and then determining that the reason was not grievable” was an

“arbitrary and irrational deprivation of property in violation of the North Carolina

Constitution.” Tully now argues on appeal that he was subjected to an arbitrary and

capricious process by the City’s failure to follow its own established promotional

procedures, an important distinction that was not alleged in Tully’s complaint. Tully

says in brief that “he never had a true opportunity to grieve his denial of a promotion
 TULLY V. CITY OF WILMINGTON

 BRYANT, J., dissenting

based on his answers to the Sergeant’s test.” However, Tully’s complaint alleges that

he was given the opportunity to appeal the selection process and to be heard on his

grievance, and was then “informed that his grievance was denied, as the test answers

were not a grievable item.” Nevertheless, Tully’s allegations in his complaint tend to

undercut his ultimate constitutional claims where the promotional process was

followed and he was heard on his grievance through the internal grievance procedure.

 Tully contends he was arbitrarily discriminated against based on test results

that he was not permitted to challenge and that such arbitrary and irrational

treatment violated his liberty interests as protected by the North Carolina

Constitution. Further, Tully argues that his lack of opportunity to adequately

challenge his test results was in violation of the WPD’s own regulations. While I

recognize Tully’s opinion of the unfairness of the result of the WPD’s testing scheme

(Tully’s denial of a promotion), and his unsuccessful challenge to the result, it is not

clear that Tully’s claims have a basis in our state constitution. Further, the cases

cited by Tully in support of his claims for constitutional review relate to the

government acting as a sovereign, rather than as an employer, and are inapposite to

the facts at hand.

 “[T]here is a crucial difference, with respect to constitutional analysis, between

the government exercising ‘the power to regulate or license, as lawmaker,’ and the

government acting ‘as proprietor, to manage [its] internal operation.’ ” Engquist v.

 2
 TULLY V. CITY OF WILMINGTON

 BRYANT, J., dissenting

Or. Dep’t of Agric., 553 U.S. 591, 598, 170 L. Ed. 2d 975, 983 (2008) (alteration in

original) (quoting Cafeteria & Rest. Workers v. McElroy, 367 U.S. 886, 896, 6 L. Ed.

2d 1230, 1236 (1961)). “ ‘[T]he government as employer indeed has far broader powers

than does the government as sovereign.’ ” Id. (quoting Waters v. Churchill, 511 U.S.

661, 671, 128 L. Ed. 2d 686, 697 (1994) (plurality opinion)). In Engquist, the U.S.

Supreme Court explained this distinction as follows:

 [T]he extra power the government has in this area comes
 from the nature of the government’s mission as employer.
 Government agencies are charged by law with doing
 particular tasks. Agencies hire employees to help do those
 tasks as effectively and efficiently as possible. The
 government’s interest in achieving its goals as effectively
 and efficiently as possible is elevated from a relatively
 subordinate interest when it acts as sovereign to a
 significant one when it acts as employer. Given the
 common-sense realization that government offices could
 not function if every employment decision became a
 constitutional matter, constitutional review of
 governmental employment decisions must rest on different
 principles than review of . . . restraints imposed by the
 government as sovereign.

553 U.S. at 598–99, 170 L. Ed. 2d at 983–84 (alterations in original) (internal

citations and quotation marks omitted); see also Connick v. Myers, 461 U.S. 138, 150–

51, 75 L. Ed. 2d 708, 722 (1983) (explaining that the government has a legitimate

interest “in ‘promot[ing] efficiency and integrity in the discharge of official duties, and

[in] [maintaining] proper discipline in the public service’ ” (quoting Ex parte Curtis,

106 U.S. 371, 373, 27 L. Ed. 232, 235 (1882)).

 3
 TULLY V. CITY OF WILMINGTON

 BRYANT, J., dissenting

 The cases cited by plaintiff in his principal brief and in the Amicus Brief

submitted on his behalf concern either a governmental entity’s assertion of its power

as a sovereign to regulate or prohibit acts detrimental to their citizens’ health, safety,

or welfare, see, e.g., King v. Town of Chapel Hill, 367 N.C. 400, 401–02, 758 S.E.2d

364, 367 (2014) (addressing town’s regulation of vehicle towing services); Roller v.

Allen, 245 N.C. 516, 517–18, 96 S.E.2d 851, 853 (1975) (considering the legality of a

statute regulating the licensure of tile, marble, and terrazzo contractors); State v.

Ballance, 229 N.C. 764, 769, 51 S.E.2d 731, 732–33 (1949) (addressing the regulation

of photographers), or is otherwise not binding precedent on this Court, see, e.g., Isabel

v. City of Memphis, 404 F.3d 404, 413–15 (6th Cir. 2005) (striking down promotional

test for police officers that violated Title VII as it was based on arbitrary standards

and did not approximate a candidate’s potential job performance); Guardians Ass’n

of the NYC Police Dep’t, Inc. v. Civil Serv. Comm’n, 630 F.2d 79, 109–12 (2d Cir. 1980)

(holding test designed to select candidates for hiring as entry level police officers had

a racially disparate impact and ordering any subsequent exam receive court approval

prior to use); Johnson v. Branch, 364 F.2d 177, 180–82 (4th Cir. 1966) (en banc)

(remanding with instructions that school board renew teacher’s contract for the next

school year after board failed to renew it).8

 8Neither Isabel nor Guardians asserted a constitutional violation, and Johnson, which raised
arguments based on the federal constitution, was remanded based on the plaintiff’s federal statutory
claims. See Johnson, 364 F.2d at 179 (“No one questions the fact that the plaintiff had neither a

 4
 TULLY V. CITY OF WILMINGTON

 BRYANT, J., dissenting

 As the “government has significantly greater leeway in its dealings with citizen

employees than it does when it brings its sovereign power to bear on citizens at

large[,]” Engquist, 553 U.S. at 599, 170 L. Ed. 2d 984, the cases cited in the briefs

submitted on behalf of plaintiff related to the government acting in its capacity as a

sovereign are inapplicable here where the government acted as an employer in

denying plaintiff a promotion.

 Because plaintiff cannot establish a valid property or liberty interest in

obtaining a promotion or in the promotional process itself, nor can plaintiff establish

that he was deprived of substantive due process or equal protection rights in failing

to be so promoted, I dissent from the majority opinion. However, because our state

Supreme Court has mandated that the N.C. Constitution be liberally construed,

particularly those provisions which safeguard individual liberties, see Corum v. Univ.

of N.C. Through Bd. of Governors, 330 N.C. 761, 783, 413 S.E.2d 276, 290 (1992) (“We

give our Constitution a liberal interpretation in favor of its citizens with respect to

those provisions which were designed to safeguard the liberty and security of the

citizens in regard to both person and property.” (citation omitted)), I would strongly

urge the Supreme Court to take a close look at this issue to see whether it is one that,

contract nor a constitutional right to have her contract renewed, but these questions are not involved
in this case. It is the plaintiff’s contention that her contract was not renewed for reasons which were
either capricious and arbitrary in order to retaliate against her for exercising her constitutional right
to protest racial discrimination.”).

 5
 TULLY V. CITY OF WILMINGTON

 BRYANT, J., dissenting

as currently pled, is subject to redress under our N.C. Constitution. Accordingly, I

respectfully dissent.

 6